IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

       Plaintiff,

v.

$236,608.50 IN FUNDS FROM US BANK ACCOUNT NUMBER 259171768429,

       Defendant.

_____

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*
_____

      The United States of America, by and through United States Attorney Jason R. Dunn and Assistant United States Attorney Laura B. Hurd, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Actions G(2), states:

### JURISDICTION AND VENUE

      1.     The United States of America has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), seeking forfeiture of defendant based upon violations of 18 U.S.C. §§ 1343, 1956, and 1957. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

      2.     Venue is proper under 28 U.S.C. § 1395, as the defendant is located, and acts described herein occurred in the District of Colorado.

### DEFENDANT PROPERTY

      3.     Defendant property is more fully described as follows:

1

Defendant $236,608.50 in funds from US Bank Account Number 259171768429.
Defendant $236,608 in funds from US Bank Account Number 259171768429
("defendant $236,608.50 in funds from US Bank Account number 8429") was seized
from US Bank in the District of Colorado and is currently being held by the United States
Marshals Service, Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

Except as otherwise noted, all of the following facts and information have been
discovered through my own investigation and observations, and the observations and
investigations of fellow law enforcement officers as reported to me.

### Underlying Investigation

1.      On November 6, 2018, Town of Vail Information Technology (IT) Manager
Ron Braden ("Braden") resigned after approximately (20) years of employment following
his arrest in Glenwood Springs, CO.

2.      Braden was the IT Director for the Town of Vail with the responsibility for
managing all aspects of IT infrastructure, to include; defining scope of work, authoring
requests for proposals, evaluating/accepting contract bids, and advising TOV staff on
technical and financial aspects of IT related issues.

3.      Following his resignation, the Town of Vail initiated an internal financial
audit of their Information Technology (IT) Department, which resulted in the discovery of
numerous invoicing inconsistencies and certain business associations existing between
Braden, Eric Nastri ("Nastri"), Verticomm, AllCopy, Oculogix, and Colorado Technology
Convergence (CTC).

2

4.      In October 2018, Financial Director Kathleen Halloran conducted a financial audit of IT contracts negotiated by Braden on behalf of the Town of Vail with Verticomm, Occulogix, and All-Copy.  Accordingly, the audit indicated that between 2012 and 2018 contracted Town of Vail funds awarded to Verticomm, Oculogix, and All-Copy were summarily transferred to a company named CTC, which Colorado Secretary of State (COSOS) records indicated was owned by Braden.

5.      Once the contracted funds were transferred to CTC, Braden sub-contracted the aforementioned IT labor services at a reduced rate and transferred the remaining funds into his personal bank account at US Bank, where it became comingled with his Town of Vail salary.  The contracts specifically negotiated by Braden on behalf of the Town of Vail between 2012 and 2018 were Dispatch IT Services, Alarm Monitoring, and Project Management.

6.      The following programs and services were contracted by Braden on behalf of the Town of Vail:  Dispatch IT Services, funded IT support for the county-wide 911 Center at a contracted rate of $90,000.00 a year; Alarm Monitoring, funded the creation of infrastructure for alarms to be monitored in the 911 Center at a contracted rate of $31,980.00 a year; and Project Management, funded the oversight of large IT projects at a rate of $79,500.00 a year.  The aforementioned programs accounted for approximately $201,480.00 per year in the Town of Vail contract budget.

7.      Colorado Secretary of State records indicated both Verticomm and Oculogix were owned by Eric Nastri - a longtime associate of Ron Braden prior to his employment with Town of Vail.  In reciprocity for funneling the Town of Vail contract funds to CTC, Braden awarded Verticomm and Oculogix with IT related work for the

Town of Vail unassociated with the aforementioned Dispatch IT Services, Alarm Monitoring, and Project Management service contracts.

8.     Additionally, Braden was advised of the Town of Vail Human Resources prohibitions (Policy 104) against employee involvement in conflict of interest scenarios defined as "occurring when an employee is in a position to influence a decision that may result in a personal gain for that employee or for a relative as a result of this organization's business dealings." Braden signed a Town of Vail employee acknowledgement of this Policy 104 in both 1995 and 1996.

9.     The Town of Vail Finance Policy (P-1) required three bids on any service expenditure costing more than $25,000 dollars and a signed contract bearing the Town Manager signature.

10.      In an interview with the Town of Vail's Financial Director Kathleen Halloran, Braden did not seek bids for the Dispatch IT Services, Alarm Monitoring, and Project Management contracts. Braden's relationship with Nastri allowed him to avoid this process and determine contract pricing outside the confines of any competitive bidding arena.

11.     Additionally, Braden utilized a confusing stream of IT industry parlance as a means of misleading the Town of Vail Financial Mangers into agreeing with his cost evaluations and financial requests in order to facilitate the continuance of existing contracts without additional approval oversight.

12.     In furtherance of his efforts, Braden routinely perpetrated various misrepresentations, to include; misleading sub-contractors that CTC was owned by Nastri and unaffiliated with Braden, misrepresenting contract funds diverted to CTC as

surplus funds reallocated to non-existent IT projects, and failing to ever advise anyone within the Town of Vail leadership of his ownership association with CTC.

13.     Independent contractors paid by CTC were compensated far below what CTC was paid, and sub-contractors were unsure of their employer and the role and ownership of CTC.  In the course of these efforts, Braden lied and individually mislead CTC sub-contractors Todd McDowell, Kevin Kromer, Brett Toews, Troy Brown, and Steve Blair about his ownership role in CTC.

14.     In March of 2015, the Town of Vail Communications Center Director Tom Banker requested, via email, the disposition of what appeared to be a $39,000 surplus remaining within the Dispatch IT Services account.  Braden indicated the funds had been reallocated for dispersal on alternative projects within the IT department that were outside of the Dispatch IT Services account.  Review of Braden's banking records, however, indicated the surplus IT funds had been funneled through CTC into his personal bank account and had not been used for alternative projects.

**Labor Contracts**

15.     Braden was also responsible for authoring the labor contracts for Dispatch IT Services, Alarm Monitoring, and Project Management.  Braden authored each of the labor contracts existing between the Town of Vail and CTC, Verticomm, and Oculogix and unilaterally determined the contracted value of the IT services for personal gain without receipt or solicitation of alternative bids.

16.     According to the Town of Vail Finance Director Kathleen Halloran, requests to Braden for signed copies of these contracts for the Finance department

records were routinely ignored, delayed, or appeased with confusing administrative explanations involving misplacement or delivery to another person.

17.     Following Braden's resignation on November 6, 2018, very few completed contracts related to these matters were located within IT Department files; however, multiple unsigned or "one-party" signature contracts were identified within Braden's files.

18.     Town of Vail records indicated Braden signed (99) vendor invoices submitted by Verticomm and Oculogix for contracted IT services related to Dispatch IT Services, Alarm Monitoring, and Project Management, despite knowing the allocated Town of Vail funds were going to be diverted to CTC.

### All Copy's Purchase of Verticomm

19.     In 2015, All-Copy purchased Verticomm and the existing Town of Vail labor contracts from Eric Nastri resulting in the formation of Verticomm – A Division of All Copy.  Following the sale, All-Copy confronted Nastri, via email, about the conflict of interest associated with Braden and his Town of Vail employment and ownership of CTC.  The email was directed to Braden, who denied the allegations as a misunderstanding and subsequently terminated the Verticomm contracts with the Town of Vail previously purchased by All-Copy and re-contracted them to Oculogix, a company controlled by Nastri.

20.     Moreover, Braden and Nastri misled the management of All Copy during the sale of Verticomm to All Copy.  Although the sale of Verticomm included the Dispatch IT Services, Alarm Monitoring and Project Management contracts, All Copy continued paying CTC as a subcontractor until November of 2017.

21.     In regards to these matters, on November 2, 2017, All Copy employee Tim De Vries wrote the following to Nastri following the sale: "I am assuming [Braden] ran the invoice through Verticomm since it would be a conflict of interest to hire his [Braden's] company to do the IT work due to the fact that [Braden] is the Information Services Director (IT decision maker, including the reviewing and picking of bids of contractors) for the Town of Vail." After the email was sent to Nastri, he directed the email to Braden for response.

22.     On November 7, 2017, Braden replied, via email, to De Vries and provided the following explanation: "It appears on the surface to be a potential conflict of interest for me. Verticomm/All Copy can make money, I obviously can't. I will be the first to admit this was not a good way to set this up."

23.     In January 2018, Braden e-mailed All Copy employee Rhonda Moseley and cancelled the Town of Vail Alarm Monitoring contract; however, the Town of Vail funding for the contracted services continued until 2019. Braden also discontinued the Dispatch IT Service and Project Management contracts with All Copy in 2018 in order to redirect the contract funding to Nastri's new company Oculogix and continued the diversion of funds to CTC.

24.     On November 6, 2018, Braden resigned from the Town of Vail.

25.     Based on the underlying investigation, Braden was charged in the 5th Judicial District in Colorado with Racketeering, Theft, Forgery, and Money Laundering and was arrested on July 3, 2020.

26.     On November 13, 2020, Braden removed his GPS ankle monitor and absconded from his residence in Eagle County, CO. On November 21, 2020, the

7

Maricopa County Sheriff's Office (MCSO) located and identified Braden as deceased in Arizona from a self-inflicted gunshot wound.

27.     Eric Nastri was also charged in the 5th Judicial District in Colorado and pleaded guilty to money laundering.

## FINANCIAL INVESTIGATION

28.     Review of financial and contract records indicated Nastri funneled 87% of the Town of Vail contracted funds allocated for Dispatch IT Services, Alarm Monitoring, and Project Management to Braden, via CTC, while retaining contract funds of 12.19% for Verticomm.  Accordingly, CTC sub-contractors were compensated a fraction (34.59%) of what Braden previously recommended the Town of Vail contract for the same IT services.

29.     In total, between 2012 and 2018, the Town of Vail payed Verticomm, All Copy, and Oculogix $1,306,945 for contracted Dispatch IT Services, Alarm Monitoring, and Project Management Services.  Verticomm, All Copy and Oculogix sub-contracted the same services to CTC for $1,147,664.90.  CTC ultimately paid its own sub-contractors $452,029.33 for the originally bid Town of Vail services and subsequently transferred $406,428 into Braden's personal bank account.

30.     Based on the underlying investigation, law enforcement also began a financial investigation into payments that Braden received into his CTC US Bank account ending in 5506 from Verticomm, All Copy, and Oculogix and the subsequent transfers of the funds.

### Facilitating US Bank, Bank Account ending in 5506 in the name of Ronald J. Braden doing business as Colorado Technology Convergence (CTC)

31.     On December 8, 2011, U.S. Bank account ending in 5506 was opened in the name of Ronald J Braden, dba CTC. The sole signor on the account was Ronald J. Braden. This account was used by Braden to receive the deposits from Verticomm, All Copy, and Oculogix.

32.     Between 2012 and 2018, Verticomm, All Copy and Oculogix subcontracted the work to CTC for $1,147,664.90. These funds for CTC were deposited into US Bank account ending in 5506.  The only other deposits into the account totaled $208,201.58, other than payments from Verticomm, All Copy and Oculogix.

33.     Withdrawals totaling $1,309,531.18 were made from US Bank account ending in 5506.  The withdrawals included payments to subcontractors totaling $452,029.33, and $406,428.50 was transferred, via interbank transfer, to Braden personal account at US Bank, account number ending in 9402, discussed below.

34.     A review of the withdrawals from US Bank, account number ending in 5506 show a check payable to Heritage Title in the amount of $20,000.00 on May 2, 2016, with the memo referencing Braden 605 Amhurst.  This check was funded with checks deposited from Verticomm Technologies, Inc. totaling $39,450.00 on February 8 and March 2, 2016.

**Facilitating US Bank, account ending in 9402 in the name of Ronald J. Braden**

35.     On March 10, 1995, U.S. Bank account ending in 9402 was opened in the name of Ronald J Braden.  The sole signor on the account was Ronald J. Braden.

36.     Between 2012 and 2018, a total of $1,383,451.95 in deposits were made into U.S. Bank account ending in 9402.  The deposits consist primarily of payroll deposits from the Town of Vail in the amount of $729,254.89 and interbank transfers

totaling $406,428.50 from US Bank account ending in 5506 to Braden's personal account at US Bank, account number ending in 9402.

37.     Between July 2016 and May 2019, Braden made mortgage payments to US Bank from his US Bank account ending in 9402 in the amount of $101,574.25, discussed below.

### Defendant $236,608.50 in US Bank bank account 259171768429 (8429) in the name of Ronald J. Braden

38.     On December 11, 1997, U.S. Bank account 259171768429 was opened in the name of Ronald J Braden.  The sole signor on the account was Ronald J. Braden.

39.     On June 4, 2019, a deposit in the amount of $332,529.86 from the sale of Braden's residence located at 605 Amherst Road, Gypsum, Colorado, 81637 was made into US Bank account, ending in 8429.

40.     As indicated above on May 2, 2016, a check in the amount of $20,000.00 was written from US Bank, account number ending in 5506, which was funded with proceeds traceable to the scheme to defraud and funds involved in money laundering.

41.     In addition, from July 2016 to May 2019, Braden made mortgage payments to US Bank from his US Bank account ending in 9402 in the amount of $101,574.25 for 605 Amherst Road, Gypsum, Colorado, 81637, which were funded with proceeds traceable to the scheme to defraud and funds involved in money laundering.

42.     Based on the investigation, defendant $236,608 in funds from US Bank Account Number 259171768429 were seized.

### CONCLUSION

43.     Based on the information set forth herein, defendant  $236,608.50  in funds from US Bank Account Number 259171768429 constitutes or was derived from

proceeds traceable to wire fraud and/or constitutes property involved in money laundering.

## VERIFICATION OF MATTHEW COLLAR

## SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION

I, Matthew Collar, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

Matthew Collar
Special Agent, FBI

## FIRST CLAIM FOR RELIEF

44.     The Plaintiff repeats and incorporates by reference each of the paragraphs above.

45.     By the foregoing and other acts, defendant $236,608.50  in funds from US Bank Account Number 259171768429, constitutes or was derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343, and is therefore forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

46.     The Plaintiff repeats and incorporates by reference the paragraphs above.

47.     By the foregoing and other acts defendant $236,608.50  in funds from US Bank Account Number 259171768429 constitutes property involved in violations of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States prays for entry of a final order of forfeiture for defendant $236,608.50  in funds from US Bank Account Number 259171768429 in favor of the United States, that the United States be authorized to dispose of the defendant $236,608.50  in funds from US Bank Account Number 259171768429 in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant  $236,608.50  in funds from US Bank Account Number 259171768429 and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 24th day of November 2020.

Respectfully submitted,

JASON R. DUNN
United States Attorney

By:   *s/Laura B. Hurd*
Laura B. Hurd
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Email: laura.hurd@usdoj.gov
*Attorney for the United States*